No. 19,508.

LOLA HOSKINSON, *Appellee,* v. H. B. SMYSER and MRS. H. B. SMYSER, *Appellants.*

SYLLABUS BY THE COURT.

1. DENTIST—*Negligence—Pulling Tooth—Injuries—Competent Witnesses.* A physician and surgeon who had examined the plaintiff's mouth with the aid of an X-ray machine was competent to testify as to the character of the work done by the defendants' employee in attempting to extract a tooth, as was also a dentist of eight years' practice who had also examined the mouth.

2. SAME—*Proof.* Proof of some of the alleged acts of negligence was sufficient without proof of all.

3. SAME—*Exclusion of Evidence.* Exclusion of evidence of the amount demanded before beginning the action held immaterial.

4. SAME — *Ordinary Care — Instructions.* An instruction that proof of a lack of ordinary care and skill was required was not rendered erroneous by the omission in one sentence of the qualifying word "ordinary."

5. SAME—*Instruction—No Error.* An instruction touching a pertinent fact proved without objection on the trial, though not expressly alleged held proper.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed May 8, 1915. Affirmed.

*H. O. Trinkle,* of Garden City, for the appellants.

*A. Schulman, Albert Hoskinson,* and *Ralph Hoskinson,* all of Garden City, for the appellee.

The opinion of the court was delivered by

WEST, J.: In her petition the plaintiff alleged that the defendants were engaged in the practice of dentistry under the name of "The Office of the Smysers, Painless Dentists," at Garden City, and had in their employ one Fox, an alleged dentist, who attempted to perform all or a part of their dental work for patients coming to the office; that about the 27th of April, 1912, the plaintiff called at the office to have a tooth extracted, which the employee Fox attempted to do, but that he wantonly, carelessly and unskillfully used surgical and dental instruments which were in an unclean, poisonous and septic condition, and wantonly, negligently, carelessly and unskillfully grasped with his forceps the jaw bone and lower process below the lower right molar instead of the tooth itself, and made three unsuccessful attempts to pull the tooth, fracturing the jaw bone below the right third molar and mutilating the lower process about the tooth, and dislocating the jaw on the right side, resulting in her jaw becoming practically locked, and so remaining for twelve days, causing her intense pain and suffering followed by four months' inability to do anything. She recovered a judgment, from which the defendants appeal and complain of certain rulings as to evidence, and certain instructions given.

It seems that on the day in question the Smysers were not at the office; that after Fox had made his second unsuccessful attempt to pull the tooth he said, according to plaintiff's testimony:

"Just let me try once more and I am sure I can get it. . . . And he tried it again and got the forceps on and started to pull and there was a noise that sounded a good deal like a nut cracking, and I felt just as though I had a hard shock, and then he quit pulling. He stopped. He then said that he had broken the tooth all to pieces and that it would work out by itself. I asked him if there wasn't anything he could do to make

it quit hurting me so and he said to just go home and wash my mouth out with salt water and it would work out itself."

The plaintiff testified that the pain was such that she was compelled to stop on her way home and remain over night at a farmhouse, and that after suffering intensely for twelve days, during which time her jaw was locked and would occasionally jerk sideways and draw her head back with a very painful jerk, she and her husband returned to the Smysers' office, and that Dr. Smyser examined her tooth and said it was ulcerated and gave her a mouth wash and told her to go home for a few days and come back and he would pull the tooth. Afterwards on the same day she had an X-ray examination by a doctor, and a consultation was called at the suggestion of Dr. Smyser, or by him, and on the day following two of those who took part in the consultation went to the home of the plaintiff, and after giving her an anæsthetic pulled the tooth and also a sound one just in front of it. When Dr. Smyser learned that Fox had made the attempt to pull the tooth he spoke of him as an old fool, and said he was no good and that he had discharged him as soon as he had returned; that he would not have a man in the office who would hurt any one pulling a tooth.

The first error complained of is the admission of the testimony of Dr. Troup, a physician and surgeon in Garden City, who made an examination of the plaintiff's jaw with the aid of an X-ray machine. Afterwards an anæsthetic was given and the jaw was pried open and the two teeth extracted. The condition of the gum and jaw was described, and although the witness was not a dentist he was permitted to testify that from his examination of the jaw and the treatment of it the extraction of the tooth was a careless job and that sufficient care was not exercised in determining whether the tooth and the tooth line were enclosed in the bite, of the forceps, and that in his judgment the alveolar process must have been taken hold of by the forceps.

Somewhat similar testimony was given by Dr. Williams who was a dentist of eight years' practice in Garden City. We think that both witnesses were competent, one being a dentist and the other a physician and surgeon who appeared to possess sufficient knowledge of the anatomy of the mouth and jaw to speak intelligently.

. It is urged that the alleged acts of negligence were not proved. True, it was not shown that the instruments were unclean, but aside from this the entire testimony shows a case of carelessness or ignorance on the part of the employee who did the work justifying a recovery under the allegations of the petition.

Complaint is made because the defendants were not permitted to testify as to how much was demanded by the plaintiff by way of damages before the suit was brought. While this might have been competent in the absence of any offer to compromise, we do not deem it material or of sufficient importance to make the exclusion erroneous. The husband, who made the demand, was on the stand and testified to what occurred when the attempt was made to pull the tooth, and the jury had the advantage of the personal presence and demeanor of both the husband and wife and were the judges of the proper amount to be recovered by the latter regardless of any offer or demand that may have been made.

The third instruction is complained of because it is said to have assumed an allegation that the tooth was crushed, which allegation was not found in the amended petition. The instruction, however, assumed that the plaintiff testified that the employee, Fox, advised her that the tooth had been crushed, and in this there was no error.

The sixth instruction is criticised because the jury were told that the burden was upon the plaintiff to establish lack of skill on the part of Fox. But the foregoing sentence of the same instruction plainly advised

the jury that the plaintiff could not recover unless the evidence showed that Fox did not exercise ordinary skill, care and prudence, and while the word "ordinary" might properly have been repeated in the succeeding sentence we think this was the only meaning to be derived from the language and the one which the jury understood.

Lastly, it is argued that there was no evidence connecting Mrs. Smyser with the responsibility of the dental office, but an examination of her own testimony shows to the contrary.

The judgment is affirmed.